IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDTIMO INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. _____ ) |
| ALLURION TECHNOLOGIES, INC., | ) **JURY TRIAL DEMANDED** ) |
| Defendant. | ) ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Medtimo Inc. ("Medtimo" or "Plaintiff") brings this action for patent infringement against Allurion Technologies, Inc. ("Allurion" or "Defendant").

## NATURE OF THE ACTION

1. This is a civil action for patent infringement. This action concerns Allurion's infringement of U.S. Patent No. 10,463,520 ("the '520 Patent"); U.S. Patent No. 11,779,482 ("the '482 Patent"); and U.S. Patent No. 11,974,934 ("the '934 Patent") (collectively, the "Asserted Patents" or "Patents-in-Suit") by making the Allurion Gastric Balloon system (also previously called the "Elipse," and collectively referred to herein as "the Allurion system") in the United States for exportation and/or sales from the United States and/or for potential sales in the United States relating to Allurion's application to the United States Food and Drug Administration ("the FDA") for approval to sell the Allurion system in the United States.

## THE PARTIES

2. Medtimo is a corporation organized and existing under the laws of Delaware, having a principal place of business at 7625 Golden Triangle Drive, Suite G, Eden Prairie, Minnesota 55344.

3. On information and belief, Allurion is a corporation organized and existing under the laws of Delaware, having a principal place of business at 11 Huron Drive, Natick, MA 01760.

4. On information and belief, Allurion may be served through its registered agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## JURISDICTION AND VENUE

5. This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including in particular under 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and the Declaratory Judgment Act, Title 28, United States Code, including §§ 2201, 2202.

6. This Court has personal jurisdiction over Allurion, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because Allurion is a Delaware corporation and thus resides in this district.

## THE PATENTS-IN-SUIT

7. The '520 Patent, entitled "Intragastric Device," was filed on August 29, 2017, and was duly and legally issued on November 5, 2019 by the U.S. Patent and Trademark Office ("USPTO"). Mark C. Brister, Paul D. Faucher, Neil R. Drake, Andrew P. Rasdal, Matthew S. Lake, Dubravka Markovic, Amy D. L. VandenBerg, Antonio C. Llevares, and Josefina Nider are listed as inventors on the face of the '520 Patent. A copy of the '520 Patent is attached as Exhibit A.

8. Obalon Therapeutics, Inc. ("Obalon") filed U.S. patent application number 15/690,095 on August 29, 2017, which resulted in the '520 Patent.

9. As listed on its face, the '520 Patent has a priority date of January 21, 2011, through the following series of continuation patent applications: Continuation of application No. 14/860,538, filed on Sep. 21, 2015, now Pat. No. 9,827,128, which is a continuation of application No. 14/227,195, filed on Mar. 27, 2014, now Pat. No. 9,351,862, which is a continuation of application No. 13/510,921, filed as application No. PCT/US2011/022165 on Jan. 21, 2011, now Pat. No. 8,740,927.

10. The '482 Patent, entitled "Intragastric Device," was filed on January 21, 2022, and was duly and legally issued on October 10, 2023 by the USPTO. Mark C. Brister, Paul D. Faucher, Neil R. Drake, Andrew P. Rasdal, Matthew S. Lake, Dubravka Markovic, Amy D. L. VandenBerg, Antonio C. Llevares, and Josefina Nider are listed as inventors on the face of the '482 Patent. A copy of the '482 Patent is attached as Exhibit B.

11. As a descendant of the '520 Patent, the '482 Patent also has a priority date of January 21, 2011.

12. The '934 Patent, entitled "Intragastric Device," was filed on September 20, 2023, and was duly and legally issued on May 7, 2024 by the USPTO. Mark C. Brister, Paul D. Faucher, Neil R. Drake, Andrew P. Rasdal, Matthew S. Lake, Dubravka Markovic, Amy D. L. VandenBerg, Antonio C. Llevares, and Josefina Nider are listed as inventors on the face of the '934 Patent. A copy of the '934 Patent is attached as Exhibit C.

13. As a descendant of the '520 Patent and the '482 Patent, the '934 Patent also has a priority date of January 21, 2011.

14. Medtimo's predecessor, ReShape Lifesciences Inc. ("ReShape"), was the assignee and owner of all rights, title, and interest in the Asserted Patents as a result of ReShape's merger

with Obalon in June 2021. The name change from Obalon to ReShape was recorded at the USPTO on October 6, 2021 at reel 057726, frame 0716.

15. Through a reverse merger in August 2025, ReShape became Vyome Holdings, Inc. ("Vyome"). Contemporaneous with the reverse merger, Biorad Medisys LTD acquired the assets of ReShape.

16. Biorad Medisys LTD formed its new U.S. subsidiary, Medtimo, in September 2025.

17. All rights, title and interest in the Asserted Patents were transferred by ReShape to Medtimo, including the right to sue for past, present and future infringement.

18. Going forward in this Complaint, Medtimo, ReShape and Obalon may be collectively referred to as "Medtimo."

## FACTUAL BACKGROUND ON MEDTIMO

19. Medtimo, including through its predecessors ReShape and Obalon, has had a long history of innovations to treat obesity and metabolic disease, including novel balloon technologies for weight loss and other technologies.

20. Medtimo offers an integrated portfolio of proven products and services that manage and treat obesity and metabolic disease, including the FDA-approved Lap-Band® for sale both in and outside the United States and the ReShape Vest which is available for sales outside the United States.

21. Medtimo's Lap-Band® product is a non-anatomy altering and minimally invasive device, designed to achieve long-term weight loss.

22. Medtimo's ReShape Vest is an anatomy friendly device that does not require stapling, cutting, or removing the stomach, and is removable.

## FACTUAL BACKGROUND ON ALLURION

23.  Allurion was founded in 2009 and competes with Medtimo by offering the Allurion system to treat obesity and metabolic disease. The Allurion system received CE approval in Europe in 2015.

24.  On information and belief, Allurion has manufactured its Allurion system in the United States for sale in Europe since 2015 and continues to do so.

25.  Allurion has a current FDA registration for manufacturing the Allurion system in the United States for export only (FEI Number 3011299930).

26.  On April 7, 2020, Allurion announced its submission to the FDA of a Premarket Approval (PMA) Application for the Allurion system in the United States.

27.  Allurion's February 9, 2023 press release states that: "Allurion's revenue growth has been fueled by increasing utilization of The Allurion Program by existing providers and rapid geographical expansion. Allurion's revenues in 2020, 2021, and 2022 were $20 million, $38 million, and $64 million, respectively." A copy of Allurion's February 9 press release is attached as Exhibit D (https://www.allurion.com/en/newsroom/allurion-to-become-publicly-listed).

28.  In Allurion's 10-K/A for the fiscal year that ended on December 31, 2023, Allurion states that "To date, most of our revenues have been generated from sales of the Allurion Balloon. We began selling the Allurion Balloon in Europe in January 2016 and to date have launched in over 50 countries globally outside of the United States. We currently sell our products either via our direct sales force or, in certain countries, distributors. In 2022, we generated $64.2 million in revenue, representing 68% year-over-year ("YOY") growth and generated a gross profit margin of 79% and a net loss of $37.7 million. In 2023, we generated $53.5 million in revenue,

representing a 17% YOY decline and generated a gross profit margin of 78% and a net loss of $82.8 million (as restated)."

29. According to Allurion's 10-K/A for the fiscal year that ended on December 31, 2024, Allurion reported revenue of $32.1 million from the Allurion Balloon.

30. According to Allurion's 10-K/A for the first two quarters of 2025 that ended on June 30, 2025, Allurion reported revenue of $8.95 million from the Allurion Balloon.

**ALLURION'S WILLFUL INFRINGEMENT OF THE ASSERTED PATENTS**

31. Allurion has known of Medtimo's patent rights at least as early as July 7, 2017, when Allurion cited Medtimo's U.S. Patent No. 9,662,239 ("the '239 Patent") in an Information Disclosure Statement ("IDS") filed with the USPTO in connection with Allurion's U.S. patent application number 15/174,864.

32. Allurion cited Medtimo's '239 Patent again in an IDS on April 29, 2020 in Allurion's U.S. patent application number 16/505,468.

33. Medtimo's '239 Patent and the Asserted Patents claim priority to the same patent application filed on January 21, 2011. Therefore, on information and belief, Allurion has been aware of Medtimo's patent rights, including the '520 Patent, since at least 2017.

34. In addition, on October 5, 2022, Medtimo wrote to Allurion's CEO Dr. Gaur explaining that Allurion's manufacturing of the Allurion system in the United States infringes the '520 patent claims, and that the Allurion system is infringing the inventions in the '520 patent, including for example, claims 1 and 18 of the '520 patent. Medtimo's October 5, 2022 letter defined the Allurion Gastric Balloon system (also previously called the "Elipse") as "the Allurion system." A copy of the October 5, 2022 letter is attached as Exhibit E. That letter explains where each element of claims 1 and 18 of the '520 patent is found in the Allurion system.

35. Among other things, Medtimo's October 5, 2022 letter to Allurion also requested that Allurion fulfill its duty to read the '520 Patent and carefully consider Allurion's infringement of Medtimo's patent rights and respond to the letter accordingly.

36. Allurion refused to resolve its infringement of the '520 Patent.

37. In March 2023, ReShape filed a complaint alleging that Allurion infringed the '520 Patent.

38. Due to ReShape's financial constraints at the time, ReShape dismissed the complaint without prejudice in May 2023.

39. On October 10, 2023, the '482 Patent issued.

40. Seven days later, by letter dated October 17, 2023, ReShape wrote to Allurion to provide notice of Allurion's need for a license to the '482 Patent due to its infringement of the '482 Patent. A copy of the October 17, 2023 letter is attached as Exhibit F.

41. On May 7, 2024, the '934 Patent issued.

42. Rather than engaging in meaningful patent license discussions, Allurion filed an *ex parte* reexamination request for the '482 Patent with the USPTO on May 23, 2024. The reexamination request was granted on June 11, 2024.

43. Following a full reexamination of the claims of the '482 Patent, the USPTO issued an order on November 26, 2024 confirming the patentability of all claims of the '482 Patent, as shown in Exhibit G. The *ex parte* reexamination certificate for the '482 Patent issued on December 23, 2024 and is attached at Exhibit H.

44. Despite having lost its *ex parte* bid to challenge the '482 Patent, Allurion still has not engaged with ReShape (now Medtimo) about its infringement of the '482 Patent.

45. On information and belief, based on the parties' extensive history described above, Allurion has been tracking Medtimo's patent portfolio including the '520 patent family and therefore has had notice of the '934 Patent well before this Complaint was filed.

46. In addition, Medtimo wrote to Allurion on September 19, 2025 notifying Allurion of its need for a license to the '934 Patent due to its infringement of the '934 Patent. A copy of the September 19, 2025 letter is attached as Exhibit I.

47. Through Allurion's knowledge of the Asserted Patents and Allurion's infringing activities as further described herein, Allurion has willfully, wantonly, and deliberately engaged in the acts of infringement alleged herein, either individually or through the approval, direction, and control of others.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,463,520

48. Medtimo incorporates and realleges the foregoing paragraphs above as if fully set forth herein.

49. Allurion's manufacturing of the Allurion system in the United States for exportation and/or sales from the United States infringes the '520 Patent. To the extent Allurion is manufacturing and/or stockpiling the Allurion system in the United States for sale in the United States in anticipation of FDA approval, such activities also infringe the '520 Patent.

50. Allurion's infringing activities regarding the '520 Patent are exemplified in Exhibit J to this Complaint.

51. The Allurion system thus meets each and every limitation of claim 1 of the '520 Patent, literally (including any literal equivalents, if applicable) or under the doctrine of equivalents. Allurion has thus infringed at least Claim 1 of the '520 Patent under 35 U.S.C. § 271(a).

52.  Medtimo is further entitled to a declaratory judgment that to the extent that Allurion is manufacturing and/or stockpiling the Allurion system in the United States for sales in the United States in anticipation of FDA approval, Allurion has infringed or will infringe the '520 Patent under 35 U.S.C. § 271(a). If Allurion receives FDA approval for sales of the Allurion system in the United States, and based thereon begins selling the Allurion system to customers and other users in the United States, Allurion will also be infringing the '520 Patent under 35 U.S.C. §§ 271(b) and (c) on the basis described below.

53.  Allurion, without authority and with knowledge of the '520 Patent, has actively induced infringement since no later than approximately October 5, 2022, and continues to actively induce infringement of one or more claims of the '520 Patent, including without limitation at least claim 1, under 35 U.S.C. § 271(f)(1), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system or a substantial portion of the components therefore, and intentionally instructing or otherwise encouraging others, including Allurion's customers and end users to combine the components of the Allurion system and use the Allurion system outside the United States in a manner that would infringe one or more claims of the '520 Patent if such combination and use occurred within the United States, including as described in Exhibit J.

54.  Allurion has contributed to, since no later than approximately October 5, 2022, and continues to contribute to the infringement by others of one or more claims of the '520 Patent, including without limitation at least claim 1, pursuant to 35 U.S.C. § 271(f)(2) literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof, or has others perform such acts on its behalf, specifically so that the Allurion system will be combined and used

in an manner by others that would infringe one or more claims of the '520 Patent if such combination and use occurred within the United States, including use as described in Exhibit J by Allurion's customers and end users. Moreover, as shown in Exhibit J in which no alternative use of the Allurion system is described, there is no other substantial use for the Allurion system or its components. Thus, the Allurion system is a material part of the claimed inventions of the '520 Patent that results in infringement when used. As a result of Allurion making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof, on information and belief other entities combine and use these products for their intended purposes and according to Allurion's instructions with the result that such entities, such as Allurion's customers and users of the Allurion system, would infringe the asserted claims of the '520 Patent if such combination and use occurred in the United States, literally or under the doctrine of equivalents, for the reasons stated above and in Exhibit J.

55. As explained below, on information and belief, Allurion acts knowingly and/or willfully blind as to the existence of the '520 Patent claims and as to the fact that at least the Allurion system is especially made and adapted for this use in an infringing manner, is not a staple article of commerce, and does not have substantial non-infringing use.

56. On information and belief, Allurion was aware of or acted with willful blindness to the existence of the '520 Patent and the combination and use of the Allurion system by third parties that would infringe the '520 Patent if it occurred in the United States, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, Allurion knew, should have known, or was willfully blind to the existence of the '520 Patent, and has since knowingly acted in disregard of Medtimo's patent rights, including by

making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof.

57. If Allurion receives FDA approval for sales of the Allurion system in the United States, Medtimo also seeks a declaratory judgment that Allurion will be infringing the '520 Patent under 35 U.S.C. §§ 271(b) and (c) on the basis described above.

58. As a direct and proximate result of Allurion's infringement of the '520 Patent, Medtimo has been, is being, and will be irreparably harmed. Medtimo is entitled to an award of damages for Allurion's infringement of the '520 Patent, in an amount to be determined at trial, including lost profits, but in no event less than a reasonable royalty.

59. Medtimo has been, is being and will be substantially and irreparably harmed by Allurion's activities infringing the '520 Patent described above unless those activities are enjoined by this Court. Medtimo has no adequate remedy at law.

60. As described above, Allurion's infringement of the '520 Patent has been willful.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,779,482

61. Medtimo incorporates and realleges the foregoing paragraphs above as if fully set forth herein.

62. Allurion's manufacturing of the Allurion system in the United States for exportation and/or sales from the United States infringes the '482 Patent. To the extent Allurion is manufacturing and/or stockpiling the Allurion system in the United States for sale in the United States in anticipation of FDA approval, such activities also infringe the '482 Patent.

63. Allurion's infringing activities regarding the '482 Patent are exemplified in Exhibit K to this Complaint.

64. The Allurion system thus meets each and every limitation of claim 1 of the '482 Patent, literally (including any literal equivalents, if applicable) or under the doctrine of equivalents. Allurion has thus infringed at least Claim 1 of the '482 Patent under 35 U.S.C. § 271(a).

65. Medtimo is further entitled to a declaratory judgment that to the extent that Allurion is manufacturing and/or stockpiling the Allurion system in the United States for sales in the United States in anticipation of FDA approval, Allurion has infringed or will infringe the '482 Patent under 35 U.S.C. § 271(a). If Allurion receives FDA approval for sales of the Allurion system in the United States, and based thereon begins selling the Allurion system in the United States, Allurion will also be infringing the '482 Patent under 35 U.S.C. §§ 271(b) and (c) on the basis described below.

66. Allurion, without authority and with knowledge of the '482 Patent, has actively induced infringement since no later than approximately October 17, 2023, and continues to actively induce infringement of one or more claims of the '482 Patent, including without limitation at least claim 1, under 35 U.S.C. § 271(f)(1), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system or a substantial portion of the components therefore, and intentionally instructing or otherwise encouraging others, including Allurion's customers and end users to combine the components of the Allurion system and use the Allurion system outside the United States in a manner that would infringe one or more claims of the '482 Patent if such combination and use occurred within the United States, including as described in Exhibit K.

67. Allurion has contributed to, since no later than approximately October 17, 2023, and continues to contribute to the infringement by others of one or more claims of the '482 Patent,

including without limitation at least claim 1, pursuant to 35 U.S.C. § 271(f)(2) literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof, or has others perform such acts on its behalf, specifically so that the Allurion system will be combined and used in an manner by others that would infringe one or more claims of the '482 Patent if such combination and use occurred within the United States, including use as described in Exhibit K by Allurion's customers and end users. Moreover, as shown in Exhibit K in which no alternative use of the Allurion system is described, there is no other substantial use for the Allurion system or its components. Thus, the Allurion system is a material part of the claimed inventions of the '482 Patent that results in infringement when used. As a result of Allurion making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof, on information and belief other entities combine and use these products for their intended purposes and according to Allurion's instructions with the result that such entities, such as Allurion's customers and users of the Allurion system, would infringe the asserted claims of the '482 Patent if such combination and use occurred in the United States, literally or under the doctrine of equivalents, for the reasons stated above and in Exhibit K.

68. As explained below, on information and belief, Allurion acts knowingly and/or willfully blind as to the existence of the '482 Patent claims and as to the fact that at least the Allurion system is especially made and adapted for this use in an infringing manner, is not a staple article of commerce, and does not have substantial non-infringing use.

69. On information and belief, Allurion was aware of or acted with willful blindness to the existence of the '482 Patent and the combination and use of the Allurion system by third parties that would infringe the '482 Patent if it occurred in the United States, including without limitation

users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, Allurion knew, should have known, or was willfully blind to the existence of the '482 Patent, and has since knowingly acted in disregard of Medtimo's patent rights, including by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof.

70. If Allurion receives FDA approval for sales of the Allurion system in the United States, Medtimo also seeks a declaratory judgment that Allurion will be infringing the '482 Patent under 35 U.S.C. §§ 271(b) and (c) on the basis described above.

71. As a direct and proximate result of Allurion's infringement of the '482 Patent, Medtimo has been, is being, and will be irreparably harmed. Medtimo is entitled to an award of damages for Allurion's infringement of the '482 Patent, in an amount to be determined at trial, including lost profits, but in no event less than a reasonable royalty.

72. Medtimo has been, is being, and will be substantially and irreparably harmed by Allurion's activities infringing the '482 Patent described above unless those activities are enjoined by this Court. Medtimo has no adequate remedy at law.

73. As described above, Allurion's infringement of the '482 Patent has been willful.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,974,934

74. Medtimo incorporates and realleges the foregoing paragraphs above as if fully set forth herein.

75. Allurion's manufacturing of the Allurion system in the United States for exportation and/or sales from the United States infringes the '934 Patent. To the extent Allurion is manufacturing and/or stockpiling the Allurion system in the United States for sale in the United States in anticipation of FDA approval, such activities also infringe the '934 Patent.

76. Allurion's infringing activities regarding the '934 Patent are exemplified in Exhibit L to this Complaint.

77. The Allurion system thus meets each and every limitation of claim 1 of the '934 Patent, literally (including any literal equivalents, if applicable) or under the doctrine of equivalents. Allurion has thus infringed at least Claim 1 of the '934 Patent under 35 U.S.C. § 271(a).

78. Medtimo is further entitled to a declaratory judgment that to the extent that Allurion is manufacturing and/or stockpiling the Allurion system in the United States for sales in the United States in anticipation of FDA approval, Allurion has infringed or will infringe the '934 Patent under 35 U.S.C. § 271. If Allurion receives FDA approval for sales of the Allurion system in the United States, and based thereon begins selling the Allurion system in the United States, Allurion will also be infringing the '934 Patent under 35 U.S.C. §§ 271(b) and (c) on the basis described below.

79. Allurion, without authority and with knowledge of the '934 Patent, has actively induced infringement since no later than approximately May 7, 2024, and continues to actively induce infringement of one or more claims of the '934 Patent, including without limitation at least claim 1, under 35 U.S.C. § 271(f)(1), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system or a substantial portion of the components therefore, and intentionally instructing or otherwise encouraging others, including Allurion's customers and end users to combine the components of the Allurion system and use the Allurion system outside the United States in a manner that would infringe one or more claims of the '934 Patent if such combination and use occurred within the United States, including as described in Exhibit L.

80. Allurion has contributed to, since no later than approximately May 7, 2024, and continues to contribute to the infringement by others of one or more claims of the '934 Patent, including without limitation at least claim 1, pursuant to 35 U.S.C. § 271(f)(2) literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof, or has others perform such acts on its behalf, specifically so that the Allurion system will be combined and used in an manner by others that would infringe one or more claims of the '934 Patent if such combination and use occurred within the United States, including use as described in Exhibit L by Allurion's customers and end users. Moreover, as shown in Exhibit L in which no alternative use of the Allurion system is described, there is no other substantial use for the Allurion system or its components. Thus, the Allurion system is a material part of the claimed inventions of the '934 Patent that results in infringement when used. As a result of Allurion making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof, on information and belief other entities combine and use these products for their intended purposes and according to Allurion's instructions with the result that such entities, such as Allurion's customers and users of the Allurion system, would infringe the asserted claims of the '934 Patent if such combination and use occurred in the United States, literally or under the doctrine of equivalents, for the reasons stated above and in Exhibit L.

81. As explained below, on information and belief, Allurion acts knowingly and/or willfully blind as to the existence of the '934 Patent claims and as to the fact that at least the Allurion system is especially made and adapted for this use in an infringing manner, are not staple articles of commerce, and does not have substantial non-infringing use.

82. On information and belief, Allurion was aware of or acted with willful blindness to the existence of the '934 Patent and the combination and use of the Allurion system by third parties that would infringe the '934 Patent if it occurred in the United States, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, Allurion knew, should have known, or was willfully blind to the existence of the '934 Patent, and has since knowingly acted in disregard of Medtimo's patent rights, including by making and/or using, offering to sell, selling, and/or exporting from the United States without authority the Allurion system and/or components thereof.

83. If Allurion receives FDA approval for sales of the Allurion system in the United States, Medtimo also seeks a declaratory judgment that Allurion will be infringing the '934 Patent under 35 U.S.C. §§ 271(b) and (c) on the basis described above.

84. As a direct and proximate result of Allurion's infringement of the '934 Patent, Medtimo has been, is being, and will be irreparably harmed. Medtimo is entitled to an award of damages for Allurion's infringement of the '934 Patent, in an amount to be determined at trial, including lost profits, but in no event less than a reasonable royalty.

85. Medtimo has been, is being, and will be substantially and irreparably harmed by Allurion's activities infringing the '934 Patent described above unless those activities are enjoined by this Court. Medtimo has no adequate remedy at law.

86. As described above, Allurion's infringement of the '934 Patent has been willful.

## JURY DEMAND

Medtimo hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Medtimo respectfully request that this Court grant the following relief:

a) Judgment that Allurion has infringed and will infringe the Asserted Patents under 35 U.S.C. §§ 271(a), 271(f)(1) and/or 271(f)(2);

b) If Allurion receives FDA approval for sales of the Allurion system in the United States, and based thereon begins selling the Allurion system in the United States, Medtimo also seeks a declaratory judgment that Allurion will be infringing the Asserted Patents under 35 U.S.C. §§ 271(b) and (c) on the basis described above;

c) An award of damages to Medtimo for Allurion's infringement of the Asserted Patents, in an amount to be determined at trial, but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284;

d) An award of treble damages to Medtimo for Allurion's willful infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

e) A declaration that this case is exceptional within the meaning of 35 U.S.C. § 285 and an award of reasonable attorneys' fees, expenses, and disbursements of this action to Medtimo;

f) An award of Medtimo's reasonable costs and expenses in this action;

g) An order enjoining and restraining Allurion and its officers, agents, employees, and those acting in privity with them, from further infringement of the Asserted Patents; and

h) Such further and other relief as this Court deems proper and just.

OF COUNSEL:

Christopher D. Bright
Ketan S. Vakil
SNELL & WILMER L.L.P
600 Anton Blvd, Suite 1400
Costa Mesa, CA  92626-7689
(714) 427-7000

September 25, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Plaintiff Medtimo Inc.*